**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER K. WARNER, ASHLEY N. | : | |
| FLESHER, AND TYLER S. HARREL, | : | Case No.: 2:23-cv-1512 |
| on behalf of themselves and all similarly | : | |
| situated individuals, | : | |
| | : | Judge: _____ |
| Plaintiffs, | : | |
| | : | |
| v. | : | **JURY DEMANDED** |
| | : | |
| HAVAR, INC., | : | |
| | : | |
| Defendant. | : | |

---

### COLLECTIVE AND CLASS ACTION COMPLAINT

---

Named Plaintiffs Heather Warner, Ashley Flesher and Tyler Harrel (collectively, "Plaintiffs") bring this action on behalf of themselves and all current and former non-exempt employees (the "Putative FLSA Collective Members") who worked for Havar, Inc. ("Defendant") at any time within the period of three (3) years preceding the commencement of this action through the date of judgment to recover compensation, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and other equitable relief pursuant to the provisions of Sections 203, 206, and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 216(b).

Named Plaintiffs  bring Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, (the "Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts"), and O.R.C. § 2307.60 claims pursuant to Fed. Civ. R. 23 for all current and former non-exempt employees (the "Putative Ohio Acts Rule 23 Class Members") who worked for Defendant at any time within the period of two (2) years preceding the commencement of this action through the date of judgment to recover

1

compensation, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and other equitable relief.

Named Plaintiff Heather Warner also brings individual claims under the Family and Medical Leave Act ("FMLA") for interference with and/or being subject to retaliation for her attempt to exercise her FMLA rights when her employer, Defendant, failed to notify Plaintiff of her eligibility for FMLA available to her upon learning of her need for leave due to her serious medical condition, which required more than three days off of work, and demoted Named Plaintiff Warner for a pretextual reason several days after she notified Defendant of her need to take FMLA leave to her for her own qualifying serious health condition.

The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.    JURISDICTION AND VENUE

1.    The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

2.    This Court has supplemental jurisdiction over Plaintiffs' and the Putative Class Members' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

3.    Venue in the Southern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's headquarters is located there.

## II.    THE PARTIES

4.    Heather K. Warner ("Plaintiff Warner") is an adult resident of Marietta, Ohio residing at 1045 Sandhill Road, Marietta, Ohio 45750. Plaintiff Warner was formerly employed by Defendant as a Live-in Direct Support Professional (a "Live-in DSP") and a Live-in DSP Home Coordinator. Plaintiff Warner was employed by Defendant from approximately June 12, 2016,

until approximately August of 2022. Plaintiff Warner worked for Defendant full time at an hourly rate, performed at least 1,250 hours of service for Defendant in the 12 months prior to her attempt to exercise her FMLA rights; and, at all times material to this Complaint, competently performed her job duties. Further, Defendant held out to Plaintiff Warner that (i) she was an FMLA eligible employee and (ii) it was an FMLA-covered employer. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit A**.

5.     Ashley N. Flesher ("Plaintiff Flesher") is an adult resident of Fleming, Ohio residing at 15884 State Route 550, Fleming, Ohio 45729 and is currently employed by Defendant as a regular DSP since February of 2023. Plaintiff Flesher has intermittently been employed with Defendant since November 19, 2014. From November 19, 2014 through August of 2016, Ms. Flesher was employed by Defendant as a Weekend Live-in DSP. She then was again employed by Defendant as a Weekend Live-in DSP approximately from October of 2016 until December of 2022. Ms. Flesher then returned to work as a regular DSP for Defendant from February of 2023 to present. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit B**.

6.     Tyler S. Harrel ("Plaintiff Harrel") is an adult resident of Marietta, Ohio residing at 1045 Sandhill Road, Marietta, Ohio 45750 and was formerly employed by Defendant as a Live-in DSP from approximately July 2007 until August 2022. His consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit C**.

7.     Defendant Havar is a corporation for non-profit licensed to do business in Ohio. Process may be served upon its Registered Agent, Shelby Rhodes, at 396 Richland Ave., Athens, Ohio 45701. Defendant is also a covered employer under the FMLA, in that, on a daily basis for at least 20 workweeks in the current or preceding calendar year of Plaintiff Warner's attempt to take leave, it employed more than 50 employees within a 75-mile radius of its facility

headquartered in Athens, Ohio (Athens County), where it employed Plaintiff Warner. Defendant also held out to Plaintiff Warner that it was an employer covered by the FMLA and that she was an FMLA eligible employee.

## III. STATEMENT OF FACTS

8.      During all times material to this Complaint, Defendant was an "employer" within the meaning of the FLSA, the FMLA, and the Ohio Acts.

9.      During all times material to this Complaint, Defendant employed Plaintiffs and the Putative Class Members within the meaning of the FLSA and the Ohio Acts.

10.     During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

11.     During all times material to this Complaint, Plaintiffs and the Putative Class Members have been Defendant's employees pursuant to the Ohio Acts and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

12.     During all times material to this Complaint, Defendant acted as a third-party employer and hired Plaintiffs and the Putative Class Members to work as Live-in DSPs, Weekend Live-in DSPs, or Live-in DPS Home Coordinators.

13.     Indeed, it is Defendant—and not Defendant's clients—that employed Plaintiffs and the Putative Class Members to provide duty caregiving services to families living in and around the Marietta and Athens, Ohio area.

14.     As Live-in DSPs and Weekend Live-in DSPs the typical duties for Plaintiffs and the Putative Class Members involved taking clients to appointments and arranging medical care, dressing, grooming, feeding, and bathing clients, light housework, and other various day-to-day care activities that clients could not complete on their own.

15.     As Live-in DSP Home Coordinators, the typical duties for Plaintiffs and the Putative Class Members involved the above typical duties for Live-in DSPs and Weekend Live-in DSPs as well as the additional responsibilities and authority to fill out more paperwork regarding the care that the client was receiving or was to receive and the permission to schedule doctor appointments for clients.

16.     More than twenty (20) percent of Plaintiffs' job duties required care-related services.

17.     During all times material to this Complaint, Plaintiffs and the Putative Class Members were paid at an hourly rate, not on a salary or fee basis as described in 29 C.F.R. § 541.301 and thus were non-exempt employees entitled to be paid at least the minimum wage for all hours worked and overtime at 150% of their regular rate for all hours worked over forty (40) in a workweek.

18.     Defendant would record Plaintiffs' and the Putative Class Members' hours worked through a manual clock-in system, wherein Plaintiffs and the Putative Class Members would have to manually clock themselves in to work and clock themselves out at the end of their respective shifts.

19. Plaintiff Warner was employed by Defendant Havar as a Live-in DSP (a non-exempt role) from approximately June 16, 2016, until August 2022.[1]

20. As a Live-in DSP, Plaintiff Warner was an hourly, non-exempt employee paid at a rate of $16.46 an hour.

21. Plaintiff Warner typically worked seven (7) days a week in scheduled shifts from 2:00 p.m. until 9:00 a.m.

22. It was Defendant's company-wide practice and policy to not pay its Live-in DSPs during the eight (8) hour period between 10:00 p.m. and 6:00 a.m. However, Live-in DPSs—including Plaintiff Warner—were still required to complete work related tasks during this unpaid period as they arose, which occurred often. Her services were to be readily available, Defendant's dependent clients regularly required assistance and supervision, she was responsible for the Defendant's dependent clients' welfare, and she was unable to leave the premises if she wanted to.

23. On October 17, 2021, Plaintiff Warner received an hourly raise. Approximately around this time, she was also promoted from a Live-in DSP to a Home Coordinator Live-in DSP. She went from making $16.67 to $18.46 an hour.

24. Plaintiff Warner reached out to the Department of Labor ("DOL") regarding the unpaid eight (8) hour period from 10 p.m. to 6 a.m. that she was not getting paid. Her case was filed on March 1, 2022.

25. The DOL investigated, and investigator Foster Andrews determined that Plaintiff Warner was entitled to compensation for her overnight work. However, Ms. Warner rejected any settlement offer that arose from the DOL investigation.

---

[1] Plaintiff Warner was promoted to the role of Live-in DSP Home Coordinator in October of 2022, but was demoted from this role in retaliation for her exercising her protected rights under the FMLA, which is discussed in the section below: "Facts as to Named Plaintiff Warner's FMLA Claims."

26.     Plaintiff Warner received a check from Defendant per the DOL for $12,800 in back pay, but she never cashed it.

27.     Plaintiff Tyler Harrel was employed by Defendant for approximately fifteen (15) years, from July 2007 until August 2022. During his employment, Plaintiff Harrel worked as a Weekend Live-in DSP (a non-exempt role) with his scheduled shifts running through the weekends.

28.     As a Weekend Live-in DSP, Plaintiff Harrel was an hourly, non-exempt employee paid at a rate of $17.29.

29.     Plaintiff Harrel regularly worked beyond forty (40) hours in a workweek as a Weekend Live-in DSP. His shift was regularly scheduled for 3:00 p.m. to 8:00 a.m. on the weekdays, and from Friday at 4:00 p.m. until Sunday at 9:00 p.m. during the weekends.

30.     Plaintiff Harrel was not paid for his hours worked from 10:00 pm to 6:00 am during his overnight shifts.

31.     It was Defendant's company-wide practice and policy to not pay its Weekend Live-in DSPs during the eight (8) hour period between 10:00 p.m. and 6:00 a.m. However, Weekend Live-in DPSs—including Plaintiff Harrel—were still required to complete work related tasks during this unpaid period as they arose, which occurred often. His services were to be readily available, Defendant's dependent clients regularly required assistance and supervision, he was responsible for the Defendant's dependent clients' welfare, and he was unable to leave the premises if he wanted to.

32.     Plaintiff Ashley Flesher has worked in various roles for Defendant intermittently since November 19, 2014. She is currently employed by Defendant as a regular DSP and has been in this role since February of 2023.

7

33. Plaintiff Flesher was a Weekend Live-in DSP from approximately November of 2014 through August of 2016, and again in October of 2016 until December 2022.

34. As a Weekend Live-in DSP (a non-exempt role), Plaintiff Flesher worked approximately forty-nine (49) hours per workweek. Her shifts were scheduled to last from 2:00 p.m. on Friday until 3:00 p.m. on Sunday. In this role, she earned approximately $16.47 per hour plus an additional $1.00 per hour through the state of Ohio.

35. Plaintiff Flesher was not paid for her work from the hours of 10:00 p.m. to 6:00 a.m. during her overnight shifts; however, she was still required to complete work related tasks during this unpaid period as they arose, which occurred often. Her services were to be readily available, Defendant's dependent clients regularly required assistance and supervision, she was responsible for the Defendant's dependent clients' welfare, and she was unable to leave the premises if she wanted to.

36. In February 2023, Plaintiff Flesher returned to work at Defendant as a regular DSP.

37. As of the filing of this Complaint, Plaintiffs and the Putative Class Members have not been paid all the wages they earned while working for Defendant, and those unpaid wages have gone unpaid for more than thirty (30) days.

38. Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay the Plaintiffs and Putative Class Members at least the federal or the Ohio minimum wage for all hours worked in this action and did not pay 150% of their regular rate for all hours worked over 40 in a workweek.

## **FACTS AS TO NAMED PLAINTIFF WARNER'S FMLA CLAIMS**

39. Plaintiff Warner re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

40.     During all times material to this Complaint, Defendant was a covered employer under the FMLA.

41.     During all times material to this Complaint, Plaintiff Warner was an employee eligible for FMLA benefits.

42.     On October 17, 2022, Plaintiff Warner received an hourly raise. Approximately around this time, she was also promoted from a Live-in DSP to a Live-in DSP Home Coordinator. She went from making $16.67 to $18.46 an hour.

43.     As a Live-in DSP Home Coordinator, Plaintiff Warner was tasked with additional responsibilities and authority than in her role as a Live-in DSP. She was permitted to fill out more paperwork regarding the care that the client was receiving or was to receive and she was further permitted to schedule doctor appointments for clients.

44.     On October 19, 2022, Plaintiff Warner was granted medical leave by Defendant under the Family Medical Leave Act ("FLMA") to undergo brain surgery. Plaintiff Warner had received a diagnosis of idiopathic intracranial hypertension (IIH) that required a lumboperitoneal shunt to be set in place.

45.     Defendant approved Plaintiff Warner's FMLA leave for thirty (30) days through a United States DOL Wage and Hour Division "Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act" form. Plaintiff Warner was therefore set to return to work for Defendant near the end of November 2022.

46.     Prior to the date that Plaintiff Warner was set to return to work from her FMLA leave, Plaintiff Warner's lumboperitoneal shunt malfunctioned—a qualifying serious health condition. She was informed by her doctor that she would require a second shunt to be put in to replace the first malfunctioning shunt.

47.     Plaintiff Warner spoke with an individual in Defendant's Human Resources (HR) department about extending her FMLA leave by thirty (30) days ("First Extension"). She received approval and had the second shunt put in on November 19, 2022.

48.     Unfortunately, Plaintiff Warner's second shunt also malfunctioned, creating the need for a third shunt to be put in its place—a qualifying serious health condition. On or about mid-December 2022, Plaintiff Warner requested a second extension for her FMLA leave but was never contacted by Defendant's HR department regarding this. On December 22, 2022, Ms. Warner had her third shunt put in.

49.     Upon learning of Plaintiff Warner's needing a second extension to her FMLA leave for her serious health condition, Defendant did not advise Ms. Warner of her right to take FMLA leave.

50.     Rather than provide Plaintiff Warner with the requisite notice of her eligibility for a second extended FMLA leave on or about mid-December 2022, Defendant, through its Human Resources department, remained silent despite Plaintiff Warner's serious health condition.

51.     As of December 22, 2022, Plaintiff Warner had enough FMLA leave available to her to cover her first leave and subsequent two extensions arising out of her serious medical condition.

52.     During her need for a second extension of medical leave, Defendant lowered Plaintiff Warner's hourly rate to $14.67.

53.     On January 1, 2023, Plaintiff Warner returned to work. Upon her return, Plaintiff Warner received a reduction in pay, going from the $18.47 she was promised before her medical leave to $16.42 an hour.

54.     As a consequence of her needing a second extension to her medical leave, Defendant retaliated by reducing Plaintiff Warner's hourly pay rate and changed and demoted her from a Live-in DSP Home Coordinator to Live-in DSP, reducing her responsibility.

55.     Upon information and belief, Defendant never eliminated the Live-in DSP Home Coordinator position.

## IV.     CAUSES OF ACTION

### COLLECTIVE ACTION ALLEGING FLSA VIOLATIONS

### A.  FLSA COVERAGE

56.     Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

57.     The FLSA Collective is defined as:

**All Hourly Live-in Direct Support Professionals ("DSPs"), Weekend Live-in DSPs, and Live-in DSP Home Coordinators who have been employed by Havar, Inc. at any time within the period of 3 years preceding the commencement of this action through the date of judgment who were not paid for their overnight hours of work**. (the "FLSA Collective")

58.     Plaintiffs reserve the right to amend and refine the definition of the class they seek to represent based upon further investigation and discovery.

59.     At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 203(r) of the FLSA, 29 U.S.C. § 203(r).

60.     At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that

enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

61.     During the respective period of the Plaintiffs' and the FLSA Collective members' employment by Defendant, these individuals have provided services for Defendant that involved interstate commerce for purposes of the FLSA.

62.     In performing the operations hereinabove described Plaintiffs and the FLSA Collective members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

63.     Specifically, Plaintiffs and the FLSA Collective members are (or were) non-exempt employees of Defendant who assisted clients, wherever they were from. 29 U.S.C. § 203(j).

64.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

65.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

66.     Collective action treatment of Plaintiffs' and the FLSA Collective members' claims is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA's requirements for payment of the statutory overtime wages.

67.     Further, Plaintiffs' FLSA claims should proceed as a collective action because Plaintiffs and the FLSA Collective members, having willfully not been paid for all the hours they worked and at least 150% of their regular rate for all hours worked beyond forty (40) in a

workweek pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

68.     The Plaintiffs and the FLSA Collective members have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal overtime wages.

69.     Plaintiffs are similarly situated to the FLSA Collective members and will prosecute this action vigorously on their behalf.

70.     Plaintiffs intend to send notice to all the FLSA Collective Members pursuant to Section 216(b) of the FLSA. The names and addresses of the FLSA Collective members are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

71.     Plaintiffs and the FLSA Collective members have been damaged by Defendant's willful refusal to pay the federally mandated overtime rate for all hours worked beyond forty (40) in a workweek. As a result of Defendant's FLSA violations, Plaintiffs and the FLSA Collective members are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

## CLASS ACTION ALLEGATIONS

72.     Plaintiffs bring their Ohio Wage Act and OPPA claims pursuant to the Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> **All Hourly Live-in Direct Support Professionals ("DSPs"), Weekend Live-in DSPs, and Live-in DSP Home Coordinators who have been employed by Havar, Inc. at any time within the period of 2 years preceding the commencement of this action through the date of judgment who were not paid for their overnight hours of work. ("Ohio Acts Rule 23 Class")**

13

73.     Plaintiffs reserve the right to amend and refine the definition of the Ohio Acts Rule 23 Class they seek to represent based upon further investigation and discovery.

74.     The number and identity of the Ohio Acts Rule 23 Class are ascertainable from Defendant's records.  For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the Federal Rule of Civil Procedure 23.

75.     The Ohio Acts Rule 23 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

76.     Upon information and belief, there are more than forty (40) Ohio Acts Rule 23 Class members.

77.     Plaintiffs' Ohio Acts claims are typical of those claims which could be alleged by any Ohio Acts Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Ohio Acts Rule 23 Class member in separate actions.

78.      Plaintiffs and the Ohio Acts Rule 23 Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay 150% of Named Plaintiffs' and the Ohio Rule 23 OPPA Class members' regular for all hours worked beyond forty (40) in a workweek.

79.     Plaintiffs and the Ohio Acts Rule 23 Class members have all sustained similar types of damages as a result of Defendant's failure to comply with the Ohio Wage Act and the OPPA.

80.     Plaintiffs and the Ohio Acts Rule 23 Class members have all  been injured in that they have been uncompensated due to Defendant's common policy, practice and willful conduct. Defendant's corporate wide policies, practices and willful conduct affected the Ohio Acts Rule 23 Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the Ohio Acts Rule 23 Class members.

81.     Plaintiffs and the Ohio Acts Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, policies and willful conduct.

82.     Plaintiffs are able to fairly and adequately protect the interests of the Ohio Acts Rule 23 Class members and have no interests antagonistic to the Ohio Acts Rule 23 Class.

83.     Plaintiffs and the Ohio Acts Rule 23 Class members are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

84.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly within the context of wage and hour litigation on behalf of non-exempt workers where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

85.      This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

86.     Common questions of law and fact exist as to the Plaintiffs and the Ohio Acts Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Ohio Acts Rule 23 Class members individually and include, but are not limited to:

a.    Whether Defendant improperly failed to pay the Plaintiffs and the Ohio Acts Rule 23 Class members for all the hours they worked and at least 150% of their respective regular rates for all hours worked beyond forty (40) in a workweek;

b.    Whether the wages owed to the Plaintiffs and the Ohio Acts Rule 23 Class members remain unpaid for more than thirty (30) days;

c.    Whether Defendant's companywide decision to not pay the Plaintiffs and the Ohio Acts Rule 23 Class members at least 150% of their respective regular rates for all hours worked beyond forty (40) in a workweek was willful and without a good faith basis;

d. The nature and extent of class-wide injury and the measure of damages for those injuries.

87. Plaintiffs and the Ohio Acts Rule 23 Class members have been damaged by Defendant's willful refusal to pay at least 150% of their respective regular rates for all hours worked beyond forty (40) in a workweek and to make that payment within thirty (30) days of the works performance.

88. As a result of Defendant's Ohio Wage Act and OPPA violations, Plaintiffs and the Ohio Acts Rule 23 Class members are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## FAILURE TO PAY WAGS, INCLUDING OVERTIME WAGES

89. Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

90. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was and is the employer of the Plaintiffs and FLSA Collective Members within the meaning of 29 U.S.C. § 203(d).

91. During the time period from approximately three (3) years preceding the commencement of this action to the present, Plaintiffs and the FLSA Collective Members were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

92. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Plaintiffs and the FLSA Collective Members within the meaning of 29 U.S.C. § 203(g).

93. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

94.     During all times material to this Complaint, Plaintiffs and the FLSA Collective Members have not been exempt from receiving overtime benefits under the FLSA because, *inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA.  *See* 29 C.F.R. §§ 541.0, *et seq.*

95.     Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiffs and the FLSA Collective Members at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

96.     Plaintiffs and the FLSA Collective Members should have been paid for all hours worked and the correct overtime rate for all hours worked in excess of forty hours per workweek during the three years from the filing date of the Complaint.

97.     At all times material to this Complaint, Defendant employed Plaintiffs and the FLSA Collective Members to work as Live-in DSPs, Weekend Live-in DSPs, and Live-in DSP Home Coordinators in furtherance of its business of providing private duty caregiving services to families living in the Marietta and Athens, Ohio area.

98.     At all times material to this Complaint, Defendant regularly employed Plaintiffs and the FLSA Collective Members to work more than forty (40) hours in a workweek.

99.     At all times material to this Complaint, Plaintiffs and the FLSA Collective Members were not paid for all hours worked and did not receive one and one-half times their regular rate for all hours they worked more than forty (40) in a workweek.

100.    At all times material to this Complaint, Defendant violated the FLSA by repeatedly failing to pay Plaintiffs and the FLSA Collective Members for all hours worked and  the legally mandated overtime premium rate at no less than one and one-half Plaintiffs' and the FLSA Collective Members' regular rate for all hours worked in excess of forty (40) in a workweek.

101.    Defendant knew or should have known of the wage payment and overtime payment requirements of the FLSA. Defendant willfully withheld and failed to pay for all hours worked and the correct overtime compensation to which Plaintiffs and the FLSA Collective Members are entitled.

102.    Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

103.    Plaintiffs and the FLSA Collective Members are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Plaintiffs and the Putative Class Members have suffered and continue to suffer damages.

**COUNT II**
**OHIO WAGE ACT**
**FAILURE TO PAY OVERTIME WAGES**

104.    Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

105.    The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* O.R.C. §§ 4111, *et seq*.; *see also* 29 U.S.C. § 206(b).

106.    The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

107.    At all times relevant to this Complaint, Defendant was an "employer" covered by the Ohio Wage Act and has been thus required to comply with its mandates.

108. At all times relevant to this Complaint, Plaintiffs and the Ohio Acts Rule 23 Class Members were covered "employees" of Defendant's pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

109. At all times relevant to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to compensate Plaintiffs and the Ohio Acts Rule 23 Class Members for all hours worked at the appropriate pay rate, including Defendant's repeated action of refusing to compensate Plaintiffs and the Ohio Acts Rule 23 Class Members for all hours worked over forty (40) hours in a workweek at a rate not less than one and one-half times their regular rate.

110. Indeed, at all times relevant to this Complaint, Plaintiffs and the Ohio Acts Rule 23 Class Members did not receive one and one-half times their regular rate for all hours they worked in excess of forty (40) in a workweek.

111. At all times relevant to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to pay Plaintiffs and the Ohio Acts Rule 23 Class Members the legally mandated overtime premium at a rate no less than one and one-half Plaintiffs' and the Ohio Acts Rule 23 Class Members' regular pay rate for all hours worked in excess of forty (40) in one workweek.

112. Plaintiffs and the Ohio Acts Rule 23 Class Members are not exempt from the wage protections of Ohio Law. During relevant times, Plaintiffs and the Ohio Acts Rule 23 Class Members were not exempt from receiving overtime because they were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* C.F.R. §§ 541 *et seq*.

113. In violating the Ohio Wage Act, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

114. Plaintiffs and the Ohio Acts Rule Class Members are entitled to unpaid overtime and other compensation, interest and attorneys' fees, and all other remedies available as

19

compensation for Defendant's violations of O.R.C. § 4111.03, by which the Plaintiffs and the Putative Class Members have suffered and continue to suffer damages.

## COUNT III
## OHIO PROMPT PAY ACT-
## FAILURE TO PROMPTLY PAY WAGES

115.    Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

116.    At all times relevant to this Complaint, Defendant was Plaintiffs and the Ohio Acts Rule 23 Class Members' "employer" and was required to comply with the Ohio Prompt Pay Act's provisions. *See* R.C. § 4113.15.

117.    The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* R.C. § 4113.15(A).

118.    At all times material to this Complaint, Defendant has refused to pay Plaintiffs and the Ohio Acts Rule 23 Class Members all owed overtime wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandate minimum wage rate, within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

119.    Plaintiffs and the Ohio Acts Rule 23 Class Members' wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

120.    Defendant's violations of the OPPA has been of a willful, intentional, or bad faith nature or has otherwise exhibited a reckless disregard of the OPPA's provisions.

## COUNT VI
## VIOLATION OF O.R.C. § 2307.60 AND 29 U.S.C. § 216(a)

121.    Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

122. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

123. By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Plaintiffs and the Ohio Acts Rule 23 Class members have been injured as a result.

124. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

125. As a result of Defendant's willful violations of the FLSA, Plaintiffs and the Ohio Acts Rule 23 Class members are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## COUNT V
## INTERFERENCE WITH FMLA RIGHTS AS TO NAMED PLAINTIFF WARNER

126. Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

127. By failing to notify Plaintiff Warner of her eligibility for FMLA-protected leave at the time it learned that her need for leave in December 2022 was for an FMLA-qualifying reason, Defendant unreasonably interfered with Plaintiff Warner's ability to exercise her FMLA rights in violation of the FMLA.

128. By taking Plaintiff Warner's absence for an FMLA-qualifying reason into negative account and using that absence as its basis for demoting Plaintiff within two days of her return from leave, Defendant unreasonably interfered with Plaintiff Warner's ability to exercise her FMLA rights in violation of the FMLA.

## COUNT VI
## RETALIATION FOR THE EXERCISE OF FMLA RIGHTS AS TO NAMED PLAINTIFF WARNER

129.    Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

130.    By taking Named Plaintiff Warner's absence for an FMLA-qualifying reason into negative account and using that absence as its basis for demoting Plaintiff (and docking her pay) within two days of her return from leave, Defendant retaliated against Named Plaintiff Warner for taking FMLA-protected leave to which she was entitled in violation of the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Action Members, and the Ohio Acts Rule 23 Class, pray that this Court enter the following relief:

A.    An Order certifying a collective action pursuant to 29 U.S.C. § 216(b) for the FLSA Collective members;

B.    Designating Plaintiffs as representatives for the FLSA Collective and designating counsel of record as Class Counsel;

C.    Issuing proper notice to the FLSA Collective members at Defendant's expense;

D.    Unpaid overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Plaintiffs and the FLSA Collective members;

E.    An Order certifying an Ohio Acts Rule 23 Class pursuant to Federal Rule of Civil Procedure 23;

F.    Designation of the Plaintiffs as representatives of the Ohio Acts Rule 23 Class and counsel of record as Class Counsel;

G.    A declaratory judgment that the practice complained of herein is unlawful under the Ohio Wage Act and the OPPA;

H.      Awarding Named Plaintiffs and the Ohio Acts Rule 23 Class members the sum of 6% of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty days, whichever is greater, pursuant to the OPPA.

I.      Declare that Defendant has violated the FMLA as to Plaintiff Warner;

J.      Order such injunctive and equitable relief as will make Plaintiff Warner whole for Defendant's FMLA violations, including reinstatement with full back pay, pre- and post-judgment interest, and costs;

K.      Award liquidated damages as to Defendant's FMLA violations in excess of $25,000;

L.      Pursuant to O.R.C. § 4111.14(J), an Order awarding an amount set by the Court sufficient to compensate Plaintiffs and the Ohio Acts Rule 23 Class members and deter future violations by the Defendant of the Ohio Wage Act, but not less than one hundred fifty dollars for each day that the violation continued;

M.      Compensatory and punitive damages under O.R.C. § 2307.60.

N.      Awarding pre-judgment and post-judgment interest;

O.      An award of prejudgment and post-judgment interest;

P.      An award of costs and expenses of this action, together with reasonable attorney' fess and expert fees; and,

Q.      Any other relief to which the Plaintiffs, the FLSA Collective members, and the Ohio Acts Rule 23 Class members may be entitled.

Dated: May 4 2023                                    Respectfully submitted,


                                                    /s/ Robert E. DeRose
                                                    Robert E. DeRose (OH Bar No. 0055214)
                                                    Jacob A. Mikalov (OH Bar No. 0102121)
                                                    **BARKAN MEIZLISH DEROSE COX, LLP**
                                                    4200 Regent Street, Suite 210

Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
jmikalov@barkanmeizlish.com
*Attorney for Named Plaintiffs and the*
*Collective and Class Members.*

## JURY DEMAND

Plaintiffs hereby demand a jury of eight (8) persons.

By: */s/ Robert E. DeRose*
Robert E. DeRose

# Exhibit A

## CONSENT TO JOIN WAGE CLAIM

**NAME:** Heather Warner

1. I hereby give my consent to participate in a collective action lawsuit against Havar, Inc. to pursue my claims of unpaid wages during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Ohio Wage Act and the Ohio Prompt Pay Act, and consent to be bound by the Court's decision.

3. I designate the law firms and attorneys at Barkan Meizlish DeRose Cox, LLP ("Barkan Meizlish, LLP") and Brian G. Miller CO., LPA as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

6. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA prior express consent to contact me via phone or text, including calls or texts made using an automated telephone dialing system and/or texting system, at any telephone number on which I can be reached.

Signature: _Heather Warner_  Date: 03/27/2023

# Exhibit B

Vinesign Document ID: E296F950-CA8D-48BD-8DB4-BB04646B1306

## CONSENT TO JOIN WAGE CLAIM

**NAME:** _Ashley Flesher_

1. I hereby give my consent to participate in a collective action lawsuit against Havar, Inc. to pursue my claims of unpaid wages during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Ohio Wage Act and the Ohio Prompt Pay Act, and consent to be bound by the Court's decision.

3. I designate the law firms and attorneys at Barkan Meizlish DeRose Cox, LLP ("Barkan Meizlish, LLP") and Brian G. Miller CO., LPA as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

6. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA prior express consent to contact me via phone or text, including calls or texts made using an automated telephone dialing system and/or texting system, at any telephone number on which I can be reached.

Signature: _Ashley Flesher_

Date: _03/27/2023_

The signed document can be validated at https://app.vinesign.com/Verify

# Exhibit C

## CONSENT TO JOIN WAGE CLAIM

**NAME:** _____Tyler Harrel_____

1. I hereby give my consent to participate in a collective action lawsuit against Havar, Inc. to pursue my claims of unpaid wages during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, the Ohio Wage Act and the Ohio Prompt Pay Act, and consent to be bound by the Court's decision.

3. I designate the law firms and attorneys at Barkan Meizlish DeRose Cox, LLP ("Barkan Meizlish, LLP") and Brian G. Miller CO., LPA as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

6. I authorize the law firm and attorneys at Barkan Meizlish, LLP and Brian G. Miller CO., LPA prior express consent to contact me via phone or text, including calls or texts made using an automated telephone dialing system and/or texting system, at any telephone number on which I can be reached.

Signature: _____     Date: _____03/27/2023_____